ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL GENERAL DE JUSTICIA
TRIBUNAL DE PRIMERA INSTANCIA
SALA SUPERIOR DE CAGUAS

| | |
|---|---|
| FAUSTINO XAVIER BETANCOURT COLÓN<br><br>**Parte Peticionaria**<br><br>v.<br><br>B.V. PROPERTIES INC. d/b/a PLAZA CIDRA SHOPPING CENTER, ME SALVE INC., SUPERMERCADOS MAXIMO INC., GRAND STORE CORPORATION, WENDCO OF PUERTO RICO INC., FULANOS DE TAL 1-100<br><br>**Parte Peticionada** | CIVIL NÚM:<br><br><br><br>SOBRE: PETICION DE ORDEN |

**PETICIÓN DE ORDEN DE INTERDICTO PERMANENTE**

AL HONORABLE TRIBUNAL:

Comparece la parte peticionaria, Faustino Xavier Betancourt Colón (en adelante, "Parte Peticionaria" o "Betancourt Colón), a través de la representación legal que suscribe, y solicita un interdicto permanente al amparo de 42 U.S.C. § 12188 debido al incumplimiento de B.V. Properties Inc. d/b/a Plaza Cidra Shopping Center, Me Salve Inc., Supermercados Maximo Inc., Grand Store Corporation, Wendco Of Puerto Rico Inc., Fulanos De Tal 1-100 (en adelante, "Parte Peticionada con las disposiciones del Título III de la ley federal conocida como American with Disabilities Act, 42 U.S.C. § 12181 et seq. (en adelante nos referimos al estatuto federal como "Ley ADA").[1]

---

[1] El Título III de la Ley ADA obliga a todas las entidades privadas y facilidades comerciales que brindan servicios al público. La obligación impuesta por el Título III consiste en no discriminar en el ofrecimiento de dichos servicios hacia las personas con impedimentos en el disfrute igual y pleno de los bienes, servicios y facilidades, privilegios, ventajas o acomodos en cualquier lugar de acomodo público. El enlace oficial del gobierno de los Estados Unidos con información sobre Titulo II/III de Ley ADA es: http://www.ada.gov/

## EL LUGAR DE ACOMÓMO PÚBLICO EN CUESTIÓN

1.      Esta es una acción que busca remediar la discriminación ilegal en un lugar de

acomodo público[2] establecido y conocido en el lugar que se menciona a

continuación:

B.V. Properties Inc. d/b/a Plaza Cidra Shopping Center, un centro comercial, así
como los siguientes estacionamientos comerciales ubicados en el mismo centro
comercial: Me Salve Inc., Supermercados Maximo Inc., Grand Store Corporation,
Wendco Of Puerto Rico Inc.
Dirección física: 12 PR-172, Cidra, 00739, Puerto Rico
Coordenadas: 18.1776874582402, -66.14770230590501

 (en adelante, nos referiremos de manera colectiva a este centro comercial y los

establecimientos comerciales arriba mencionados como "la Propiedad" o el "lugar

de acomodo público" o nos referimos a cada uno de estos lugares manera individual

por su nombre).

## NECESIDAD DE LA ACCION

2.      Esta Petición de interdicto permanente es necesaria por lo siguiente:

    a) La Parte Peticionada no procuró la eliminación de barreras arquitectónicas;

    b) La Parte Peticionada mantiene en el lugar de acomodo público barreras

        arquitectónicas en violación de la ADA y a las Guías de Diseño Accesible

        promulgadas por el Departamento de Justicia de los Estados Unidos, las

---

[2] El término  "public accommodation" o lugar de acomodo público, 42 U.S.C. 12181(7), se define
como entidades privadas cuyas operaciones afectan el comercio y específicamente se mencionan
las siguientes lugares a modo de ejemplificar lo que es un lugar de acomodo público: hoteles,
moteles, hospederías, restaurantes, barras, otros establecimientos que sirvan comida o bebidas,
cines, teatros, salas de conciertos y presentaciones, estadios, lugares para exhibiciones o
entretenimiento, auditorios, centros de convenciones, salas de presentaciones, lugares de
congregación, panaderías, tienda de comestibles, tiendas de ropa, tiendas de herramientas, centros
comerciales, otros establecimientos de ventas o renta, lugares de lavado ("laundromat"), secado
(dry-cleaning), bancos, barberías, salones de belleza, agencias de viaje, servicios de reparación de
zapatos, funerarias, estaciones de gasolina, oficina de un contable o abogado, farmacias, oficinas
de seguros, oficina de profesionales de la salud, hospitales, otros establecimiento de servicios, un
terminal o estación utilizado para transportación pública, museos, librerías, galerías, otros lugares
donde haya exhibiciones públicas o colecciones, parques, zoológicos, parques de diversión y otros
lugares de recreación, centro de cuido de infantes ("nursery"), escuelas elementales, secundarias,
universidades, o escuelas post-graduadas privadas o cualquier otro lugar se provea educación,
centro de cuido de niños, centro de cuido de "seniors", refugios de personas sin hogar, lugares
donde se da comida, agencias de adopción, o cualquier otro establecimiento donde se dan servicios
sociales, gimnasios, spas de salud, boleras, lugares de golf y otros lugares de ejercicio y recreación.

cuales puede ser accedidas a través del siguiente enlace oficial: https://www.ada.gov/2010ADAstandards_index.htm

c) La Parte Peticionaria visitó el lugar de acomodo público y allí encontró personalmente barreras arquitectónicas que se relacionan con su discapacidad;

d) La Parte Peticionaria se (i) encuentra en inminente riesgo de encontrar las barreras arquitectónicas y (ii) sería fútil regresar al lugar de acomodo público en este momento ya que constituiría un riesgo a la seguridad personal de la Parte Peticionaria o equivaldría a someterse a una condición o situación desagradable, humillante y discriminatoria;

e) La parte peticionaria tiene la intención presente de poder disfrutar los bienes, privilegios, servicios que están disponibles en el lugar de acomodo público una vez las barreras arquitectónicas sean removidas en su totalidad. Sin embargo, la Parte Peticionaria se reserva el derecho de regresar al lugar de acomodo público en cualquier momento antes de que se remuevan las barreras arquitectónicas, aunque ello represente someterse a condiciones peligrosas o discriminatorias, con el fin de buscar, identificar y denunciar el discrimen.

## LA PARTE PETICIONARIA

3.     El señor Faustino Xavier Betancourt Colón, Parte Peticionaria, es una persona natural y su dirección postal y residencial es: RES Los Lirios, 11 Calle Teresa Jornet, BLDG 8, APT 94, San Juan, PR 00926-7563. Su número de teléfono es: (787) 348-7280. Fax.: No tiene. Parte Peticionaria es una persona que sufre de una discapacidad física o mental que limita sustancialmente varias de sus actividades cotidianas principales. La discapacidad física es: insuficiencia cardiaca (congestive heart failure, 20% heart function), hidrocefalia, anormalidades del pie, obesidad. Estas condiciones o "impairments" limitan sustancialmente, de manera conjunta e

3

individualmente (en comparación con la mayoría de la población) al menos una de las siguientes actividades principales cotidianas o del diario vivir: caminar, estar y mantenerse de pie, levantar objetos, inclinarse, hablar, respirar, y otras que enciclopedias, diccionarios y tratados médicos autoritativos han relacionado con las discapacidades antes mencionada. A modo de ejemplo, la insuficiencia cardiaca causa que hinchazón en los pies (causado por la acumulación de líquidos) lo que resulta en una movilidad limitada. La insuficiencia cardiaca causa problemas para respirar, lo que resulta en una capacidad para ambular sustancialmente limitada. Las deformidades del pie causan limitaciones sustanciales en la movilidad. La hidrocefalia, causa necesidad frecuente de orinar y limita su capacidad para caminar y mantener balance. La obesidad, por su parte, no es una mera característica fisíca en el caso del demandante, sino una condición médica y mesurable que es por sí sola un impedimento por limitar sustancialmente la capacidad de movimiento. En la alternativa, se alega que la obesidad es un impedimento porque tiene una causa subyacente, a saber, la insuficiencia cardiaca, la hidrocefalia y la deformidad congénita del pie. El demandante tiene un record medico extenso sobre las condiciones antes mencionadas. El señor Betancourt Colón está registrado como una persona con discapacidades en el Departamento de Salud de Puerto Rico (ID No. B-201009500). También se emitió a su favor lo que se conoce popularmente como un "carné de impedido" permanente que no es otra cosa que un rótulo especial emitido por el Departamento de Transportación y Obras Públicas que permite que el señor Faustino Colón pueda estacionarse legalmente en espacios designados como accesibles ("de impedido"). El señor Faustino Colón también es dueño y frecuentemente usa un vehículo de movilidad ("mobility scooter") que es equivalente a una silla de ruedas.

4. La parte Peticionaria tiene un "disability", según definido por la Ley ADA. 42 U.S.C. § 12102(1)(A).

5.      Como se mencionó, el Departamento de Transportación y Obras Gobierno de Puerto Rico (DTOP) ha expedido para beneficio de la Parte Peticionaria un rótulo removible de personas con impedimento físico, de modo que la Parte Peticionaria pueda utilizar el rótulo para estacionarse en estacionamientos identificados como accesibles o "de impedido" cuyo número es 1124023.  El rótulo removible no tiene que ser utilizado en un vehículo especifico ni tiene que ser utilizado en un vehículo de motor inscrito a favor de la parte Peticionaria. La Parte Peticionaria tiene derecho a utilizar el rótulo removible expedido por DTOP en cualquier vehículo, ya sea uno propio, un familiar, un amigo o un vehículo que haya abordado de manera incidental. La Parte Peticionaria tiene derecho legal a utilizar estacionamientos designados como accesibles o "de impedidos" en esta jurisdicción sin importar el vehículo de motor en el que se encuentre abordo.

## LA PARTE PETICIONADA

6.      La Parte Peticionada está integrada por las siguientes personas naturales o jurídicas: B.V. Properties Inc. d/b/a Plaza Cidra Shopping Center, así como los siguientes estacionamientos comerciales: Me Salve Inc., Supermercados Maximo Inc., Grand Store Corporation, Wendco Of Puerto Rico Inc.

7.      Los comendados Fulanos de Tal 1-100 son personas naturales o jurídicas desconocidas son titulares, arrendadores, arrendatarios y operadores del la Propiedad que se identifica en el primer párrafo de esta Petición. Ya que la identidad de estos se desconoce en estos momentos, se enmendará la Petición a los fines de acumularlos a este procedimiento civil. En esta Petición, el término "Parte Peticionaria" incluye también a todos los peticionados desconocidos identificados con el nombre ficticio "Fulano de Tal 1-100".

## JURISDICCIÓN Y COMPETENCIA

9.    De este procedimiento civil ser removido al Tribunal de Distrito de los Estados Unidos, se invocada jurisdicción sobre la materia de conformidad con 28 U.S.C. §§ 1331 y 1343 (a)(3) y (a)(4) por violaciones de la ADA.

10.    El Tribunal de Primera Instancia tiene jurisdicción original para dilucidar controversias que surgen al amparo del Título III de la American with Disabilities Act, 42 U.S.C. § 12181 et seq. Sin embargo, ello no impide que este procedimiento pueda ser removido al foro federa.

11.    Esta acción civil ha sido presentada ante el foro judicial que ostenta la competencia toda vez que la Propiedad en controversia está ubicada en esta región judicial.

## HECHOS

12.    La Propiedad es un lugar de acomodo público según definido por la Ley ADA, 42 U.S.C. 12181(7) y es un lugar abierto al público y cuya operación afecta el comercio. La Propiedad no es residencial, no es un club privado ni es una iglesia.

13.    La Parte Peticionaria es residente de Puerto Rico y vive muy cerca la Propiedad en vehículo de motor.

14.    La parte peticionaria visitó la Propiedad para eso del 20 de marzo de 2021 y encontró barreras que interfirieron con la capacidad de la Parte Peticionaria para usar y disfrutar los bienes, servicios, privilegios y acomodos ofrecidos en la Propiedad. También ese día la existencia de barreras desalentó el deseo de usar y disfrutar los bienes y servicios en Me Salve Inc., Supermercados Maximo Inc., Grand Store Corporation y Wendco Of Puerto Rico Inc.

15.    Además, con independencia de lo expresado anteriormente sobre la fecha de la visita, hoy 20 de marzo de 2021, la Parte Peticionaria se ha sentido disuadida o desalentada de visitar la Propiedad porque tiene conocimiento de las barreras ilegales que limitan e interfieren con su acceso a la Propiedad. La Parte Peticionaria

sabe que sería fútil e inútil enfrentar estas barreras porque enfrentarlas equivale a someterse a una situación humillante, discriminatoria y peligrosa. Todas barreras aquí descritas están directamente relacionadas con la discapacidad de la Parte Peticionaria e interfieren su completo y acceso igual acceso.

16. Se incorpora y se hace formar parte de esta demanda el ANEJO A, es una alegación suplementaria que es producto de una investigación realizada por el señor Faustino Betancourt durante la última visita realizada a la Propiedad. Las imágenes que se presentan a continuación constatan el estado histórico de las instalaciones del Centro Comercial y en cada uno de sus establecimientos, como una breve relación causa-daño.

17. Además se incorpora y se hace formar parte de esta demanda el ANEJO B, es una alegación adicional dentro de la cual adjunto documento oficial expedido por El Departamento de Transportación y Obras Públicas del Gobierno de Puerto Rico (DTOP), que acredita al señor Faustino Betancourt como beneficiario de los privilegios otorgados a las personas con discapacidad, tanto para el estacionamiento, descuentos, filas expresas designadas para los discapacitados, entre otros.

18. A base de sus observaciones personales, y a base de su experiencia como persona con limitaciones que ha visto cientos de lugares accesibles y no accesibles a través de su vida, la Parte Peticionaria alega afirmativamente que existen las siguientes barreras arquitectónicas en la Propiedad relacionadas a su discapacidad en el siguiente orden primero las barreras evidenciadas del Centro Comercial y en los siguientes títulos se relaciona las barreras de cada establecimiento:

Estacionamiento, Ruta de Acceso y Entrada<br>En el Centro Comercial

a) El estacionamiento no recibe un mantenimiento adecuado en violación a 28 C.F.R. § 36.211(a)

b) En cuanto a la ruta de acceso, no hay una ruta de acceso desde los

estacionamientos o la acera hasta una entrada accesible. ADAAG 1991 § 4.3; ADAAG 2010 § 206.2.1.

c)     En cuanto a estacionamientos, no hay el número requerido de estacionamientos accesibles. ADAAG 1991 § 4.1.2; ADAAG 2010 § 208.2. Posibles soluciones: reconfigurar el estacionamiento mediante la utilización de pintura.

d)     En cuanto a estacionamientos, no se cumple el requisito de que al menos un estacionamiento que cumpla con las especificaciones técnicas y dimensiones de la categoría "van".[3]   ADAAG 1991 § 4.1.2 (b); ADAAG 2010 § 208.2. Tampoco se cumple con el requisito de que una sexta parte de los estacionamientos accesibles tengan las dimensiones de categoría "van". Id. Posibles soluciones: reconfigurar el estacionamiento mediante la utilización de pintura.

e)     La configuración y dimensiones de los estacionamientos es sustancialmente inconsistente con lo requisitos de reglamentación aplicable. ADAAG 2010 § 502.2, 502.3. Posibles soluciones: reconfigurar el estacionamiento mediante la utilización de pintura.

f)     La configuración y dimensiones de los espacios adyacentes a los estacionamientos es sustancialmente inconsistente con los requisitos de la reglamentación aplicable. ADAAG 2010 § 502.2, 502.3., 503.3.3. Posibles soluciones: reconfigurar el estacionamiento mediante la utilización de pintura.

g)     La pendiente en los estacionamientos y los espacios adyacentes a los estacionamientos es inconsistente con los requisitos de la reglamentación aplicable, pues su inclinación es mayor a 1:48 en todas las direcciones.

---

[3] La ADAAG ni la legislación estatal requiere que una persona con discapacidades tenga una van o camioneta para estacionarse en dichos estacionamientos clasificados por la ADAAG como "Van". Tiene que haber, y se tiene derecho a utilizar, todos los estacionamientos accesibles que requiere la ADAAG.

ADAAG 2010 § 502.4. Posibles soluciones: nivelar las superficies; reubicar estacionamientos en cumplimiento con las guías para ubicación de estacionamientos accesibles.

h)   Los espacios adyacentes a los estacionamientos no conectan con una ruta accesible. ADAAG 2010 § 502.3. Posibles soluciones: reconfigurar los estacionamientos de forma tal que el pasillo accesible (access aisle) conecte con la ruta accesible.

i)   Los estacionamientos no están identificados con el símbolo internacional de accesibilidad. ADAAG 2010 § 502.3. Posibles soluciones: colocar toda la rotulación reglamentaria en todos los estacionamientos accesibles. La rotulación debe ser a la altura y en la posición requerida por la reglamentación.

j)   El posicionamiento de la rotulación de los estacionamientos es sustancialmente inconsistente con la reglamentación aplicable. ADAAG 2010 § 502.6. Posibles soluciones: colocar rotulación a la altura y en la posición requerida por la reglamentación.

k)   Ningún estacionamiento tiene la rotulación de "van" requerida por la reglamentación aplicable. ADAAG 2010 § 502.6. Posibles soluciones: colocar la rotulación en todos los estacionamientos accesibles y a la altura y en la posición requerida por la reglamentación.

l)   Los estacionamientos accesibles no están ubicados en la ruta accesible más cercana a la entrada accesible. ADAAG 2010 § 502.6. Posible solución: reconfigurar los estacionamientos.

m)   La ruta de acceso hacia la entrada accesible desde los estacionamientos no es firme, estable y tiende a ser resbalosa. ADAAG 2010 § 302.1. Posibles soluciones: reparar pavimentación desnivelada, reparar protuberancias y hoyos; remplazar la superficie existente con asfalto u otro material.

n)   La ruta de acceso hacia la entrada accesible desde los estacionamientos no

tiene 36" pulgadas de ancho. ADAAG 2010 § 403.5.1. Posibles soluciones: remover objetos que reducen el espacio; ampliar el ancho de la ruta de acceso.

o)  En la ruta de acceso hacia la entrada accesible hay rampas cuya pendiente es muy inclinada de manera sustancialmente inconsistente con la reglamentación aplicable. ADAAG 1991 §§ 4.8.1, 4.8.2; ADAAG 2010 §§ 403.3 ("cross slope" y "running slope"). Posible solución: reconfigurar para que la pendiente sea 1:20.

p)  En la ruta de acceso hay rampas de aceras ("curb ramps") cuya configuración y dimensiones son sustancialmente inconsistentes con los requisitos de la reglamentación aplicable. ADAAG 1991 §§ 4.7.1, 4.7.2, 4.7.2.3, 4.7.4, 4.7.5, 4.7.6, 4.7.9, 4.7.10; ADAAG 2010 §§ 402.2, 406.1, 405.2, 406.1, 405.3, 405.5, 406.4, 406.3). Posibles soluciones: modificar la rampa para ajustarla a los requisitos de la reglamentación.

q)  En cuanto a la ruta de acceso, en la ruta desde su comienzo en los estacionamientos hasta la entrada accesible hay partes cuya inclinación es mayor a 1:20 (lo que equivale que esa inclinación se considere una rampa para fines de la ADAAG), pero la configuración física existente no cumple con los requisitos aplicables a las rampas de manera sustancialmente inconsistente con la reglamentación aplicable. ADAAG 1991 §§ 4.7.1, 4.7.2, 4.7.2.3, 4.7.4, 4.7.5, 4.7.6, 4.7.9, 4.7.10; ADAAG 2010 § 405.5 (ancho de la rampa) 405.4 (superficie de rampa no es estable), 405.2 (inclinación de la rampa), 405.7.2, 405.7.3 (aterrizaje o "landing" de la rampa), 405.7.4 (espacio 60" x 60" en el giro), 405.7.4 (pásanos requerido en rampa cuya elevación es más de 6"), 505.4 (altura del pasamanos de la rampa), 505.6 (obstrucciones en el tope del pasamanos de la rampa); 505.7.1 (diámetro del pasamano circular no es ente 1 1/4" y  2"), 505.7.1 (pasamanos no-circular no tiene un perímetro de entre 4" y 6 1/4"), 505.10.1 (pasamanos no se extiende 12" más allá del nivel de

abajo y arriba de la rampa). Posibles soluciones: alterar el pasamano, remplazar el pasamano, reconfigurar el pasamano, ajustar la altura del pasamanos, instalar pasamanos, aumentar espacio para aterrizaje o reubicar la rampa.

<u>Me Salve Inc. Haciendo negocios como Tienda Me Salve</u>

r)   Hay mostradores donde se espera que la persona alcance por iniciativa propia, como son máquinas de pago, pero están fuera de alcance ya que las partes operables están ubicados a más de 48" del suelo. ADAAG 2010 §§ 904.5.1, 308.3.1, 308.3.1, 308.3.2, 308.2.1, 904.5.1, 904.5.1, 904.5.2.

s)   Hay un mostrador de pago, pero la configuración y dimensiones son sustancialmente inconsistentes con la reglamentación aplicable. ADAAG 1991 § 7.2 ADAAG 2010 §§ 904.3.1 (requiriendo que haya una porción del mostrador que sea 36" de alto por 36" de ancho), 904.4 (requiriendo que la parte accesible del counter sea de la misma profundidad que la parte no accesible), 904.4, 904.1 (requiriendo un espacio mínimo para acercamiento paralelo u horizontal al mostrador), 306.2.2, 306.2.4, 306.3.1 (requiriendo un espacio debajo del mostrador cuando el diseño del mostrador es para acercamiento frontal). Posibles soluciones: bajar una sección del mostrador, ampliar una sección del mostrador, remplazar el mostrador, ampliar la profundidad del mostrador, reconfigurar espacios para permitir acercamiento paralelo o frontal, reconfigurar mostrador para dar el espacio requerido debajo del mostrador en casos de diseño para acercamiento frontal.

t)   La entrada no cumple con los requisitos de la reglamentación aplicable. En cuanto a las entradas que no son accesibles, estas no tienen letreros que indiquen la ubicación de la entrada accesible. ADAAG 2010 § 216.6 Hay entradas accesibles y no accesibles, pero las entradas accesibles no tienen el símbolo internacional de impedido identificándolas. ADAAG 2010 § 216.6.

Posibles soluciones: hacer todas las entradas accesibles y/o colocar la rotulación requerida por la reglamentación aplicable.

<u>Supermercados Máximo, Inc. haciendo negocios como Supermax Cidra</u>

u) Hay un mostrador de pago, pero la configuración y dimensiones son sustancialmente inconsistentes con la reglamentación aplicable. ADAAG 1991 § 7.2 ADAAG 2010 §§ 904.3.1 (requiriendo que haya una porción del mostrador que sea 36" de alto por 36" de ancho), 904.4 (requiriendo que la parte accesible del counter sea de la misma profundidad que la parte no accesible), 904.4, 904.1 (requiriendo un espacio mínimo para acercamiento paralelo u horizontal al mostrador), 306.2.2, 306.2.4, 306.3.1 (requiriendo un espacio debajo del mostrador cuando el diseño del mostrador es para acercamiento frontal). Posibles soluciones: bajar una sección del mostrador, ampliar una sección del mostrador, remplazar el mostrador, ampliar la profundidad del mostrador, reconfigurar espacios para permitir acercamiento paralelo o frontal, reconfigurar mostrador para dar el espacio requerido debajo del mostrador en casos de diseño para acercamiento frontal.

v) Hay mostradores donde se espera que la persona alcance por iniciativa propia, como son máquinas de pago, pero están fuera de alcance ya que las partes operables están ubicados a más de 48" del suelo. ADAAG 2010 §§ 904.5.1, 308.3.1, 308.3.1, 308.3.2, 308.2.1, 904.5.1, 904.5.1, 904.5.2.

<u>Grand Store Corporation, haciendo negocios como Grand Stores</u>

w) En cuanto a la ruta de acceso, no hay una ruta de acceso desde la acera hasta una entrada accesible. ADAAG 1991 § 4.3; ADAAG 2010 § 206.2.1. Posibles soluciones: añadir una rampa, modificar para que la gradación de la pendiente sea 1:20; añadir una plataforma de elevación ("lifter").

x) En cuanto a estacionamientos, no hay el número requerido de estacionamientos accesibles. ADAAG 1991 § 4.1.2; ADAAG 2010 § 208.2.

Posibles soluciones: reconfigurar el estacionamiento mediante la utilización de pintura.

y)    El estacionamiento no recibe un mantenimiento adecuado para que se mantenga en "condición operable" en violación a 28 C.F.R. § 36.211(a). Por ejemplo, el mantenimiento del área de estacionamiento ha sido pobre, inconsistente y en incumplimiento con la reglamentación aplicable.

z)    En cuanto a estacionamientos, no se cumple el requisito de que al menos un estacionamiento que cumpla con las especificaciones técnicas y dimensiones de la categoría "van".[4]   ADAAG 1991 § 4.1.2 (b); ADAAG 2010 § 208.2. Tampoco se cumple con el requisito de que una sexta parte de los estacionamientos accesibles tengan las dimensiones de categoría "van". Id. Posibles soluciones: reconfigurar el estacionamiento mediante la utilización de pintura.

aa)   La configuración y dimensiones de los estacionamientos es sustancialmente inconsistente con los requisitos de reglamentación aplicable. ADAAG 2010 § 502.2, 502.3. Posibles soluciones: reconfigurar el estacionamiento mediante la utilización de pintura.

bb)   La pendiente en los estacionamientos y los espacios adyacentes a los estacionamientos es inconsistente con los requisitos de la reglamentación aplicable, pues su inclinación es mayor a 1:48 en todas las direcciones. ADAAG 2010 § 502.4. Posibles soluciones: nivelar las superficies; reubicar estacionamientos en cumplimiento con las guías para ubicación de estacionamientos accesibles.

cc)   Los estacionamientos no están identificados con el símbolo internacional de

---

[4] La ADAAG ni la legislación estatal requiere que una persona con discapacidades tenga una van o camioneta para estacionarse en dichos estacionamientos clasificados por la ADAAG como "Van". Tiene que haber, y se tiene derecho a utilizar, todos los estacionamientos accesibles que requiere la ADAAG.

accesibilidad. ADAAG 2010 § 502.3. Posibles soluciones: colocar toda la rotulación reglamentaria en todos los estacionamientos accesibles. La rotulación debe ser a la altura y en la posición requerida por la reglamentación.

dd) El posicionamiento de la rotulación de los estacionamientos es sustancialmente inconsistente con la reglamentación aplicable. ADAAG 2010 § 502.6. Posibles soluciones: colocar rotulación a la altura y en la posición requerida por la reglamentación.

ee) Ningún estacionamiento tiene la rotulación de "van" requerida por la reglamentación aplicable. ADAAG 2010 § 502.6. Posibles soluciones: colocar la rotulación en todos los estacionamientos accesibles y a la altura y en la posición requerida por la reglamentación.

ff) Los estacionamientos accesibles no están ubicados en la ruta accesible más cercana a la entrada accesible. ADAAG 2010 § 502.6. Posible solución: reconfigurar los estacionamientos.

gg) La ruta de acceso hacia la entrada accesible desde los estacionamientos no es firme, estable y tiende a ser resbalosa. ADAAG 2010 § 302.1. Posibles soluciones: reparar pavimentación desnivelada, reparar protuberancias y hoyos; remplazar la superficie existente con asfalto u otro material.

hh) La ruta de acceso hacia la entrada accesible desde los estacionamientos no tiene 36" pulgadas de ancho. ADAAG 2010 § 403.5.1. Posibles soluciones: remover objetos que reducen el espacio; ampliar el ancho de la ruta de acceso.

ii) En la ruta de acceso hacia la entrada accesible hay rampas cuya pendiente es muy inclinada de manera sustancialmente inconsistente con la reglamentación aplicable. ADAAG 1991 §§ 4.8.1, 4.8.2; ADAAG 2010 §§ 403.3 ("cross slope" y "running slope"). Posible solución: reconfigurar para que la pendiente sea 1:20.

jj) Hay un mostrador de pago, pero la configuración y dimensiones son

sustancialmente inconsistentes con la reglamentación aplicable. ADAAG 1991 § 7.2 ADAAG 2010 §§ 904.3.1 (requiriendo que haya una porción del mostrador que sea 36" de alto por 36" de ancho), 904.4 (requiriendo que la parte accesible del counter sea de la misma profundidad que la parte no accesible), 904.4, 904.1 (requiriendo un espacio mínimo para acercamiento paralelo u horizontal al mostrador), 306.2.2, 306.2.4, 306.3.1 (requiriendo un espacio debajo del mostrador cuando el diseño del mostrador es para acercamiento frontal). Posibles soluciones: bajar una sección del mostrador, ampliar una sección del mostrador, remplazar el mostrador, ampliar la profundidad del mostrador, reconfigurar espacios para permitir acercamiento paralelo o frontal, reconfigurar mostrador para dar el espacio requerido debajo del mostrador en casos de diseño para acercamiento frontal.

kk) Hay mostradores donde se espera que la persona alcance por iniciativa propia, como son máquinas de pago, pero están fuera de alcance ya que las partes operables están ubicados a más de 48" del suelo. ADAAG 2010 §§ 904.5.1, 308.3.1, 308.3.1, 308.3.2, 308.2.1, 904.5.1, 904.5.1, 904.5.2.

ll) Se provee un baño en el estacionamiento, pero carece de la rotulación que exige la reglamentación aplicable. ADAAG 2010 §216.8, 206.2.4. Posibles soluciones: colocar la rotulación a la altura y en el posicionamiento correcto. Nótese que la rotulación debe cumplir además con los requisitos para que sea accesible a las personas con discapacidades visuales.

mm) En cuanto al área del inodoro, la altura del inodoro medida desde la superficie es sustancialmente inconsistente con la reglamentación aplicable. ADAAG 2010 § 604.4. Posibles soluciones: ajustar la altura del inodoro; reemplazar el inodoro.

nn) En cuanto al área del inodoro, la configuración existente en la pared al lado y detrás del inodoro es sustancialmente inconsistente con la reglamentación

aplicable. ADAAG 2010 §§ 604.5.1, 609.4., 609.3, 604.5.2, 609.4, 609.6.

oo)  En cuanto al inodoro, la configuración del control para la descarga del inodoro es sustancialmente inconsistente con la reglamentación aplicable. ADAAG 2010 § 604.6 (altura del elemento que activa la descarga), 604.6 (ubicación del control de descarga). Posibles soluciones: reubicar el elemento que activa la descarga (flush control).

pp)  En cuanto al área del inodoro, el posicionamiento del dispensador de papel de inodoro, así como el papel de inodoro, es sustancialmente inconsistente con la reglamentación aplicable. ADAAG 2010 §§ 604.7, 604.7, 604.7. Posibles soluciones: reconfigurar la posición del dispensador de papel y papel.

<u>Wendco Of Puerto Rico, Inc. haciendo negocios como Wendy's Plaza Cidra</u>

qq)  Se provee un baño en el estacionamiento, pero carece de la rotulación que exige la reglamentación aplicable. ADAAG 2010 §216.8, 206.2.4.  Posibles soluciones: colocar la rotulación a la altura y en el posicionamiento correcto. Nótese que la rotulación debe cumplir además con los requisitos para que sea accesible a las personas con discapacidades visuales.

rr)  No hay una ruta de acceso hacia un baño accesible. ADAAG 2010 § 206.2.4. Posibles soluciones: establecer una ruta hacia el baño sin obstrucciones.

ss)  En cuanto al lavamanos, el espacio alrededor del lavamanos es sustancialmente inconsistente con la reglamentación aplicable. ADAAG 2010 § 606.2. Posibles soluciones: ampliar el espacio alrededor del lavamanos; reubicar objetos que se pueden mover.

tt)  En cuanto al lavamanos, el espacio debajo del lavamanos es sustancialmente inconsistente con la reglamentación aplicable. ADAAG 2010 § 306.2. Posibles soluciones: hacer espacio debajo del lavamanos; reposicionar el lavamanos; cambiar el lavamanos a uno accesible.

uu)  En cuanto al lavamanos, la altura del lavamanos es sustancialmente

inconsistente con la reglamentación aplicable. ADAAG 2010 §§ 606.3, 606.3.3, 306.3.3 (altura en el espacio del área de pies). Posibles soluciones: reposicionar la altura del lavamanos; cambiar el lavamanos.

vv)     En cuanto al lavamanos, la parte de abajo del lavamanos no está configurada para evitar el contacto con los objetos que están debajo del lavamanos. ADAAG 2010 § 605.5. Posibles soluciones: modificar el área debajo del lavamanos para que no haya contacto entre piernas o rodillas y los objetos que están debajo del lavamanos.

ww)     En cuanto al lavamanos, el grifo no tiene una configuración que permite su operación sin tener que apretar fuerte, torcer o girar la muñera. ADAAG 2010 § 606.4. Posibles soluciones: sustituir el grifo.

xx)     No hay un dispensador de jabón con el posicionamiento y altura que requiere la reglamentación aplicable. ADAAG 2010 §§ 308.2.2, 308.2. Posibles soluciones: reubicar el dispensador de jabón.

yy)     En cuanto al área del inodoro, la altura del inodoro medida desde la superficie es sustancialmente inconsistente con la reglamentación aplicable. ADAAG 2010 § 604.4. Posibles soluciones: ajustar la altura del inodoro; reemplazar el inodoro.

zz)     En cuanto al área del inodoro, la configuración existente en la pared al lado y detrás del inodoro es sustancialmente inconsistente con la reglamentación aplicable. ADAAG 2010 §§ 604.5.1, 609.4., 609.3, 604.5.2, 609.4, 609.6.

aaa)     En cuanto al inodoro, la configuración del control para la descarga del inodoro es sustancialmente inconsistente con la reglamentación aplicable. ADAAG 2010 § 604.6 (altura del elemento que activa la descarga), 604.6 (ubicación del control de descarga). Posibles soluciones: reubicar el elemento que activa la descarga (flush control).

bbb)     En cuanto al área del inodoro, el posicionamiento del dispensador de papel

de inodoro, así como el papel de inodoro, es sustancialmente inconsistente con la reglamentación aplicable. ADAAG 2010 §§ 604.7, 604.7, 604.7. Posibles soluciones: reconfigurar la posición del dispensador de papel y papel.

ccc) En cuanto a los pasamanos alrededor del inodoro, tanto al lado ("side grab bar") como detrás ("rear grab bar") del inodoro, la configuración existente en la pared al lado y detrás del inodoro es sustancialmente inconsistente con la reglamentación aplicable a los pasamanos. ADAAG 2010 §§ 604.5.1, 609.4., 609.3, 604.5.2, 609.4, 609.6. Posibles soluciones: colocar y posicionar pasamanos de manera consistente con la reglamentación citada.

19. Las barreras identificadas en el párrafo anterior son solo aquellas que la Parte Peticionaria conoce personalmente a base de su experiencia y sentido común como persona con discapacidades, no a base de pruebas científicas o periciales, lo que quiere decir que la Parte Peticionaria descansa en su percepción sobre distancia y dimensiones para llegar a sus conclusiones.  Rodriguez v. Econo Rial, LLC, Civil No. 17-1943 (BJM) (D.P.R. Oct. 23, 2019) ("even a lay witness may estimate size, weight, distance, speed and time even when those quantities could be measured precisely") (citando a Strong v. Valdez Fine Foods, 724 F.3d 1042, 1046 (9th Cir. 2013), ambos casos sobre la capacidad de una persona con impedimentos de declarar sobre las barreras arquitectónicas.

20. La totalidad de las barreras existentes en la Propiedad, incluyendo las encontradas y otras no descubiertas al momento, son la causa del daño legal de la Parte Peticionaria, es decir, la falta de acceso completo, libre y espontaneo a la Propiedad. Por esto, es la intención de la Parte Peticionaria utilizar los mecanismos de descubrimiento de prueba para buscar, identificar y señalar todas aquellas barreras arquitectónicas relacionadas con la discapacidad de la Parte Peticionaria para que el acceso a la Propiedad sea completo e igualitario.  Luego de identificadas las barreras, la Parte Peticionaria se propone solicitar al tribunal enmendar las

alegaciones para conformar las mismas a la prueba descubierta sobre violaciones a la ADAAG ahora desconocidas. En la alternativa, la Parte Peticionaria procurará incoar tantos procedimientos civiles como sea necesario para lograr la eliminación de las barreras arquitectónicas.

21.     La Parte Peticionaria se ha visto desalentada, y al presente se siente desalentada, de visitar la Propiedad porque la Parte Peticionaria sabe que los bienes, servicios, acomodos, privilegios, ventajas y facilidades de la Propiedad no puede ser accedidas sin que la Parte Peticionaria se someta nuevamente al discrimen. En cuanto a cuando la Parte Peticionaria conoce los bienes y servicios ofrecidos en la Propiedad, se alega afirmativamente que la Parte Peticionaria regresará a la Propiedad una vez que se eliminan las barreras. En cuanto a porqué regresará a la Propiedad, regresará con el fin de (1) comprar u orientarse de los servicios (en el caso de la Cooperativa), (2) con el fin de verificar que en efecto se hayan eliminado las barreras arquitectónicas y (3) monitorear que se mantenga un estado de cumplimiento en la Propiedad.

22.     Los peticionados sabían, o debían saber, que la Propiedad era y es inaccesible; que las condiciones la Propiedad violan la ley federal e interfieren (o niegan) el acceso a los discapacitados. Además, los peticionados tienen los recursos financieros para eliminar estas barreras de la Propiedad (sin mucha dificultad o gasto), y hacer que la Propiedad sea accesible para la Parte Peticionaria. Hasta la fecha, sin embargo, la Parte Peticionada se niega a eliminar esas barreras.

23.     La Parte Peticionada ha poseído y disfrutado de suficiente control y autoridad para modificar la Propiedad para eliminar barreras y cumplir con la reglamentación federal aplicable. La Parte Peticionada no ha eliminado tales barreras y no ha modificado la Propiedad para cumplir con los estándares de accesibilidad aplicables. La Parte Peticionada, de manera intencional, ha mantenido la Propiedad en su estado actual y se ha abstenido intencionalmente de alterar la Propiedad para

que cumpla con los estándares de accesibilidad.

24.     La Parte Peticionaria alega afirmativamente que la presencia contínua de barreras en la Propiedad es tan obvia y abierta que establece la intención discriminatoria de la Parte Peticionada. La naturaleza de las desviaciones a los estándares federales no sugiere incumplimiento con la reglamentación debido a mera negligencia o un error humano. El incumplimiento existente es tan sustancial que es obvio para un observador casual de inteligencia promedio que no tiene pericia en los estándares de diseño accesible o que no tiene experiencia con barreras arquitectónicas por no tener una discapacidad.  Es a base de esto que la Parte Peticionaria cree, y por tanto alega afirmativamente, que la intención discriminatoria incluye la negativa consciente y ponderada de no adherirse a normas de construcción relevantes; el menosprecio hacia los planos de construcción y permisos emitidos para la Propiedad; la decisión concienzuda de mantener el diseño arquitectónico (tal como existe actualmente) en la Propiedad; la decisión de no eliminar las barreras arquitectónicas mantenerla en estado de incumplimiento motivado por fines de lucro. Se alega afirmativamente que la Parte Peticionaria ha querido mantener una competencia desleal con sus competidores al no invertir dinero en cumplir con el mandato federal a pesar de que sus competidores si tienen que invertir en cumplimiento, lo que afecta a otros actores económicos.   Las barreras arquitectónicas en la Propiedad no son interrupciones aisladas (o temporales) de acceso por mantenimiento o reparaciones.

25.     Basado en el incumplimiento histórico de la Parte Peticionada con la ADAAG, la Parte Peticionaria cree, y por lo tanto alega, que la Parte Peticionada no tiene políticas, procedimientos o documentos internos en relación a esfuerzos de cumplimiento de ADA en la Propiedad.

CG2021CV01042 03/05/2021 11:44:22 am Entrada Núm. 1 Página 21 de 36

## CAUSA DE ACCIÓN
### American with Disabilities Act de 1990

26.  La Parte Peticionaria incorpora las alegaciones contenidas en los párrafos anteriores.

27.  El Título III de la ley ADA dispone esencialmente que ningún individuo será tratado de manera desigual por razón de discapacidad en el pleno y equitativo disfrute (o uso) de bienes, servicios, instalaciones, privilegios y acomodos ofrecidos por cualquier persona ya sea titular, arrendador, arrendatario u operador de un lugar de acomodo público. 42 U.S.C. § 12182 (a).

28.  La Parte Peticionada discriminó contra la Parte Peticionaria al negarle un disfrute y acceso pleno e igual a los bienes, servicios, privilegios y acomodos de la Propiedad durante cada visita y cada ocasión en que la Parte Peticionaria decidió no visitar el lugar.

29.  La ley ADA establece diferentes estándares dependiendo de cuándo se construyó la estructura física y si la instalación ha sido alterada desde el 26 de enero de 1992. 28 CFR §§ 36.401, 36.402. Las propiedades "existentes" antes del 26 de enero de 1992 tienen que eliminar las barreras de acceso de las personas con discapacidades cuando la eliminación sea "fácilmente alcanzable". 42 U.S.C. § 12182 (b) (2) (A) (iv); 28 CFR § 36.304. Estructuras diseñadas y construidas para ser ocupadas por primera vez después del 26 de enero de 1993 deben ser accesibles para personas con discapacidades a menos que la entidad pueda demostrar que es "estructuralmente poco práctico". 42 USC § 12183 (a). Finalmente, las alteraciones posteriores al 26 de enero, 1992 debe hacerse para garantizar que, en la "máxima extensión posible", las porciones alteradas de las instalaciones sean accesibles. 28 CFR § 36.402 (a) (1).

30.  Los estándares de diseño, ADAAG, se publicaron por primera vez en 1991 y están codificados en 28 CFR Parte 36, Apéndice A ("ADAAG de 1991"). Los más

recientes estándares de diseño ADA fueron publicado por primera vez en 2010 y se codificaron en 28 CFR Parte 36, Subparte D (La ADAAG de 2010). Ambas normas están disponibles en www.ada.gov. Todas las construcciones nuevas y modificaciones comenzadas el 15 de marzo de 2012 o después deben cumplir con la ADAAG de 2010.

31.    La Parte Peticionaria cree que la Propiedad fue diseñada para ser ocupada por primera vez después del 26 de enero de 1993. Ver 28 CFR § 36.401.

32.    La Parte Peticionaria cree que la Propiedad está ubicada en un lugar que fue construído después del 26 de enero de 1993. Ver 28 CFR § 36.401.

33.    La Parte Peticionaria cree que la Propiedad fue "alterada" luego del 26 de enero de 1993. El término "alterada" o "alteraciones" incluye, pero no se limita a, remodelación, renovación, rehabilitación, restauración histórica, cambios o reordenamiento en partes o elementos estructurales, cambios o reordenamiento en la configuración de paredes y cambios en los mostradores, mesas u objetos dentro de la Propiedad.

34.    En la alternativa, si la Propiedad no fue diseñada y construída para ser ocupada por primera vez después de 26 de enero de 1993, la Propiedad es una instalación existente en cuyo caso hay una obligación de eliminar barreras arquitectónicas que afectan a las personas con discapacidad en la medida que la eliminación sea "fácilmente alcanzable". 42 USC § 12182 (b) (2). La ley ADA establece que, al evaluar si la eliminación de barreras es "fácilmente alcanzable ", los factores a considerar incluyen los" recursos "de la instalación, 42 USC § 12181 (9) (b), que incluye "los recursos financieros generales de cualquier empresa matriz o entidad ", 28 CFR § 36.104. Si la Parte Peticionada sostiene que no tiene los recursos financieros a modo de defensa afirmativa para excusar su incumplimiento, la Parte Peticionaria no acepta dichos pretextos y se propone utilizar los mecanismos de descubrimiento de prueba conforme a 28 C.F.R. § 36.104.

## NO ELIMINAR LAS BARRERAS EN UNA INSTALACIÓN EXISTENTE

35.   La ADA prohíbe específicamente no eliminar las barreras arquitectónicas en instalaciones existentes cuando tal eliminación es fácilmente alcanzable. 42 USC § 12182 (b) (2) (A) (iv); 28 C.F.R. § 36.104.

36.   Cuando una entidad puede demostrar que la eliminación de una barrera no se puede lograr fácilmente, esa entidad tiene que procurar que los bienes, servicios, privilegios y acomodos se hagan disponibles mediante mecanismos alternos, si estos métodos son fácilmente alcanzables.  § 12182 (b) (2) (A) (v).

37.   Aquí, la parte Peticionaria alega que la Parte Peticionada puede eliminar fácilmente las barreras arquitectónicas en la Propiedad sin mucha dificultad o gasto, y que la Parte Peticionada viola la ley ADA al no eliminar esas barreras, cuando fácilmente podía y puede hacerlo.

38.   En la alternativa, si no es "fácilmente alcanzable" para la Parte Peticionada eliminar las barreras arquitectónicas, la Parte Peticionada violó la ADA al no hacer disponibles sus servicios a través de métodos alternativos que fuesen fácilmente alcanzables.

## NO DISEÑAR Y CONSTRUIR<br>UNA INSTALACIÓN ACCESIBLE

39.   La Propiedad fue diseñada y construída (o ambos) después del 26 de enero de 1992 - activando los requisitos de acceso bajo el Título III de la ADA y la reglamentación promulgada por el Departamento de Justicia de los Estados Unidos.

40.   La Parte Peticionada violó la ley ADA al diseñar y construir (o ambos) la Propiedad en una manera que no era fácilmente accesible para el público con discapacidad física, incluída la Parte Peticionaria, cuando hacerlo era estructuralmente práctico.

## NO HACER ACCESIBLE UNA INSTALACIÓN ALTERADA

41.   La Parte Peticionaria cree, y por tanto alega afirmativamente, que la Propiedad

ha sido alterada (según el término "alteración" es definido por §§ 202.1, §202.3, 202.4) después del 26 de enero de 1992. 28 CFR §36.403; 49 CFR §37.43.

42.     La ADA también requiere que las instalaciones se alteren de forma tal que sea fácilmente accesible para las personas con discapacidad en la medida máxima posible. 42 U.S.C. § 12183 (a) (2).

43.     La Parte Peticionada alteró la Propiedad de una manera que violó la ADA y que la hizo no fácilmente accesible al público con discapacidad física, incluyendo a la Parte Peticionaria.

## POLÍTICAS Y PROCEDIMIENTOS

44.     La ley ADA también requiere hacer modificaciones razonables en las políticas, prácticas o procedimientos, cuando es necesario para dar igual acceso a los servicios, bienes, privilegios o acomodos a las personas con discapacidades, a menos que la entidad pueda demostrar que hacer tales modificaciones alterarían fundamentalmente su naturaleza. 42 USC § 12182 (b) (2) (A) (ii).

45.     Aquí, la Parte Peticionada violó la ley ADA al no hacer modificaciones razonables en sus políticas, prácticas o procedimientos en la Propiedad, cuando estas modificaciones son necesarias para permitir (sin alterar fundamentalmente la naturaleza del lugar de acomodo público) el igual acceso a los bienes, servicios, instalaciones, o acomodos.

46.     La Parte Peticionaria busca todo remedio disponible bajo la ADA (es decir, interdicto permanente, honorarios de abogados, costos y gastos legales) por estas violaciones mencionadas. 42 USC § 12205.

47.     La Parte Peticionada alega que la falta de eliminación de barreras ha sido a sabiendas, voluntaria e intencional porque:

     i.    Las barreras descritas aquí son claramente visibles y tienden a ser obvias incluso a un observador casual;

    ii.    La Parte Peticionada jamás ha reconocido que el cumplimiento de ADA

no es un esfuerzo de una sola vez, sino una obligación *continua*. Se han negado a eliminar barreras o crear alternativas para dar acceso;

iii. La Parte Peticionaria es titular, arrendador, arrendatario y/o operador de la Propiedad, y como tal tiene control sobre las condiciones de la misma día a día. La Parte Peticionada ha tenido los medios y la capacidad financiera de hacer la remediación necesaria de las barreras de acceso, pero eso nunca le ha interesado.

iv. Los lugares de acomodo público tienen la obligación de ser accesibles. Existe una consecuencia si no lo hacen: se puede ser objeto de un procedimiento civil, ya sea iniciado por el gobierno federal, estatal o una persona privada. La Parte Peticionaria decidió no ser proactiva y para proporcionar acceso por iniciativa propia. La Parte Peticionada asumió una actitud que se puede describir como "vamos a esperar, no hagamos nada, resolvemos si pasa algo". La ley ADA se firmó el 26 de julio de 1990 por el entonces presidente George H.W. Bush luego de que fuese aprobada mediante consenso bipartita. La Parte Peticionada no tiene excusas para haber evadido sus obligaciones legales, y tampoco el desconocimiento de la ley excusa sus consecuencias y cumplimiento.

v. La Parte Peticionada ignora las experiencias de las personas con discapacidades que no pueden comprar, realizar transacciones comerciales personales, visitar al médico o recrearse como la mayoría de las personas. Son muchos los lugares en todo Puerto Rico, como en la Propiedad de la Parte Peticionada, donde se han ignorado los requisitos razonables de la ley ADA. La ley ADA tiene la capacidad de hacer la diferencia entre la participación y la exclusión diaria.

vi. La Parte Peticionada también ignora sus propias experiencias en otros

lugares de acomodo público. Esto es, la Parte Peticionada ha visto que en otros lugares existen estacionamientos accesibles, baños accesibles, mostradores accesibles y muchos elementos más en cumplimiento, por lo que tenía y tiene conocimiento de cuales son los accesos que se deben dar a las personas con discapacidades.

vii. La Parte Peticionada sabe que los permisos administrativos estatales y municipales no equivalen a cumplimiento con las leyes de accesibilidad aplicables. La Parte Peticionaria cree, y por tanto alguna, que algunos de los permisos municipales y estatales que tiene la Parte Peticionada para operar su lugar de acomodo público señalan expresamente que el permiso para operar el negocio no equivale a una certificación de cumplimiento con la ley ADA.

viii. Se cree, y por tanto se alega, que existen certificaciones de arquitectos, ingenieros, contratistas, gestores y empleados de gobierno donde se certificó de manera contraria a la realidad (potencialmente fraudulenta, sujeto a investigación y descubrimiento de prueba) que la propiedad cumplía con la reglamentación de la ley ADA con el propósito de diseñar, construir, alterar u operar la Propiedad en controversia en violación a la reglamentación federal. La Parte Peticionada no puede ampararse en actos impropios suyos o de terceros para justificar la operación continua de un lugar de acomodo público que viola la reglamentación federal aplicable.

ix. La Parte Peticionada no tiene obligación de dar una notificación por escrito de la falta de accesibilidad. Ninguna otra ley de derechos civiles permite que los comercios y lugares de acomodo público discriminen sin consecuencia hasta que las víctimas de la discriminación notifiquen al negocio que se ha violado la ley. Si fuese un requisito dar

"notificación" a la persona que viola derechos civiles, los lugares de acomódo público no serían proactivos en la eliminación de las barreras arquitectónicas. En su lugar, muchos asumirían una actitud de "mejor espero y resuelvo si alguien dice y prueba que me dio aviso de lo que es obvio que está mal". La ADA no coloca el peso de actuar en las personas con discapacidades que la ley busca proteger; el deber de ser proactivo lo tiene el lugar de acomodo público. Si fuese un requisito dar avisos al establecimiento, el costo de dar el aviso y probar que se dio el aviso va a recaer sobre la persona con discapacidades, quienes usualmente ya tienen capacidad financiera limitada. Por ejemplo, un aviso escrito por un lego probablemente resulte en una litigación extensiva y controversia de hecho sobre si ese aviso realmente se entregó a una persona con autoridad (como si fuese un emplazamiento), si se envió por correo a la dirección correcta (en un contexto donde muchos comercios operan de manera informal y sin direcciones postales) o controversias sobre si realmente se envió el escrito (forzando al discapacitado a asumir el costo de envío de cartas por correo certificado) o controversias interminables sobre si el aviso fue suficiente, especifico o completo. Los discapacitados encuentran múltiples barreras diariamente o no van a lugares porque saben que no son accesibles (contrario a una persona que no sufre accidentes de transito todos los días), de modo que los discapacitados, bajo el enfoque de dar "avisos" tendrían que invertir mucho dinero en enviar carta por correo certificado o entregar a la mano a persona con autoridad estos avisos. Requerir avisos evitaría que el tribunal se concentre en la sustancia del mandato federal, accesibilidad, y pondría escollos procesales al ejercicio de los derechos.

x.    Establecer y administrar un negocio requiere cumplimiento de muchas leyes y normas. Ese es el costo de hacer negocios. Quien decide operar un lugar de acomodo publico, tiene que cumplir con las leyes aplicables desde el día uno. Actúa de manera a sus propios actos quien decide operar un lugar de acomodo público que desde el día uno excluye o limita el acceso a las personas con discapacidades. Es impensable que se busque retrasar (mediante requerir "avisos") o eliminen las consecuencias para las pequeñas o grandes empresas que no paguen impuestos o no cumplan con los códigos de salubridad y seguridad. Violar los derechos de las personas con discapacidad no debe tratarse de manera diferente. También es inaceptable que se requiera cumplimiento a las "grandes" empresas y no a las medianas o pequeñas (o viceversa) o que se requiera cumplimiento dependiente del lugar de incorporación de la compañía o dependiendo del originen nacional o raza de los dueños o accionista de la compañía o empresa.

xi.   Hay grandes esfuerzos federales para educar a los dueños de negocios sobre sus obligaciones de la ADA, incluido el sitio web detallado del Departamento de Justicia de los Estados Unidos sobre cumplimiento con ADA (ada.gov), la línea directa del Departamento de Justicia, materiales de asistencia técnica extensa del Departamento de Justicia y los diez centros regionales ADA financiados por el gobierno federal que proporcionan recursos a profundidad y capacitación en todos los estados ( adata.org ). Sin embargo, la Parte Peticionada no ha hecho ningún esfuerzo significativo y proactivo para cumplir con la ADA.

xii.  A base del incumplimiento histórico y nivel de incumplimiento, se cree que la Parte Peticionada jamás ha reconocido que los estándares de accesibilidad de ADA son extremadamente importantes. No son

28

detalles menores o reglas exigentes, sino más bien, son esenciales para garantizar la verdadera accesibilidad. Una puerta que es demasiado estrecha puede ser la diferencia entre acceder a un negocio o no. Un baño con un espacio muy pequeño puede hacer la diferencia entre usar o no un baño. Dicho esto, es importante señalar que para imponer responsabilidad bajo la ley ADA, la barrera no necesita excluir completamente a la Parte Peticionaria de entrar o usar la instalación; solo necesita *interferir* con el disfrute pleno e igual de la Parte Peticionaria. La ADAAG establece estándares técnicos requeridos para que haya un "disfrute pleno e igualitario". Por eso, si una barrera viola el ADAAG y dicha barrera se relaciona con la discapacidad de la Parte Peticionaria, el igual y completo acceso se ve menoscabado, lo que constituye discriminación bajo la ADA.

xiii.   Se sabe que las personas con discapacidad experimentan una pérdida de dignidad, independencia, personalidad y orgullo asociados con la segregación y la falta de acceso a alojamientos públicos.  Beyond the Price Tag: An Economic Analysis of Title III of the Americans with Disabilities Act, 20 Kan. J. L. & Pub. Pol'y 58, 76, 85 (Fall 2010). Las barreras de acceso y la segregación crea estigma social y socava los sentimientos de autoestima e independencia de las personas con discapacidad. Stacey Menzel Baker, Jonna Holland and Carol Kaufman- Scarborough, How Consumers with Disabilities Perceive "Welcome" in Retail Servicescapes: A Critical Incident Study, 23 J. of Serv. Marketing 160, 167-168 (2007).  Las barreras también causan que las personas con discapacidad tengan una reacción general negativa a todo el entorno minorista, y experimentar miedo e incomodidad en ese ambiente.  Carol Kaufman-Scarborough, Reasonable Access for

Mobility-Disabled Persons is More Than Widening the Door, 75 J. of Retailing 479, 483, 494 (1999). Véase además, The Routledge Handbook of Designing Public Spaces for Young People: Processes, Practices and Policies for Youth Inclusion (2020) (discutiendo el concepto de acceso a una experiencia sustancialmente similar, más allá del acceso físico, desde una perspectiva científica); Moreno Llopis, Beatriz. La arquitectura al servicio de la discapacidad funcional. Diss. 2020; Cruz, Vanessa Vianna, et al. "Accessibility barriers for people with disabilities or reduced mobility: an integrative review." Research, Society and Development 9.4 (2020): 168943053; Carol Kaufman-Scarborough and Stacey Menzel Baker, Do People with Disabilities Believe the ADA Has Served Their Consumer Interests?, 39 J. of Consumer Aff. 1, 24 (Summer 2005); Baker, Stacey Menzel, Jonna Holland, and Carol Kaufman-Scarborough. How consumers with disabilities perceive "welcome" in retail servicescapes: a critical incident study. Journal of Services Marketing (2007); Realm, Public. Experiential Accessibility. La inaccesibilidad en la web también constituye también unos de los grandes retos modernos.  Cohen, Alex H., Jorge E. Fresneda, and Rolph E. Anderson. What Retailers Need To Understand About Website Inaccessibility And Disabled Consumers: Challenges And Opportunities. Journal of Consumer Affairs.

xiv. La Parte Peticionaria rechaza con vehemencia argumentos de que hacer valer la ley ADA de manera privada es ilegítima. La ley debe cumplirse independientemente que el lugar de acomodo público sea una entidad pequeña, mediana o grande. La Ley ADA no permite discriminar a unos sí y a otros no. La prohibición de discriminen es absoluta y aplica a todos por igual.  No se hace distinción por origen social, nacional,

ciudadanía o residencia legal de quien opera un lugar de acomodo público, sea una persona natural o jurídica. Cumplir con los estándares de accesibilidad física de la ADA requiere que los dueños de negocios tomen medidas proactivas y, a menudo, incurrir en costos. Desafortunadamente, en este caso, la ley ni la posibilidad de ser objeto de una acción civil (de parte del gobierno o privada) fue suficiente incentivo para que se diera un cumplimiento voluntario. La ADA no fue suficiente para convencer a la Parte Peticionada a cumplir con la ley y el objetivo de esta Petición es procurar que finalmente se cumpla el mandato de ley.

**SEGUNDA CAUSA DE ACCIÓN**
**REHABILITATION ACT DE 1973**
(Sección 504, 29 U.S.C. § 701 et seq.)

9. Se incorporan todos los párrafos anteriores por referencia.

10. La Sección 504 dispone: "No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a).

11. La Parte Peticionaria es una persona protegida por la Sección 504 ya que es una persona con una discapacidad, según.

12. La Parte Peticionaria es una persona elegible para recibir los beneficios y servicios que se hacen disponibles al público en la Propiedad.

13. El CARES Act autoriza a la Small Business Administration (SBA) a proveer asistencia económica temporera a organizaciones elegibles. Específicamente, la Sección 1102 del CARES Act estableció el programa conocido como Paycheck Protection Program (PPP), que amplió la autoridad de SBA para garantizar prestamos bajo la sección 7(a) del Small Business Act. La Sección

1110 del CARES Act amplió a su vez la autoridad de SBA para distribuir prestamos conocidos como Injury Disaster Loans (EIDL) bajo la Sección 7(b)(2) del Small Business Act. En resumen, esto significa que se pueden tomar un prestamo que luego no se tiene que repagar.

14. Por supuesto, el recibo directo de fondos federales supone unas obligaciones para los beneficiarios. Por ejemplos, múltiples leyes de derechos civiles imponen obligaciones a las personas que reciben fondos federales. Entre ellas, el Titulo VI de la Ley de Derechos Civiles de 1964 y, en lo aquí relevante, la Sección 504 del Rehabilitation Act, que prohíbe el discrimen por razón de discapacidad.  De igual manera, la reglamentación de la SBA también le prohíbe a entidades que reciben fondos federales discriminar a base de ciertas categorías protegidas, incluyendo "handicap" o impedimento. 13 C.F.R. Sección 112 que implementa el título VI; 13 C.F.R. Sección 117, que implementa  la Age Discrimination Act; of 13 C.F.R. Sección 113, Subparte A. Por mandato reglamentario, las entidades que reciben fondos federales tiene una obligación de mantener records y producir reportes de cumplimiento con estos requisitos cuando ello sea solicitado; deben también permitir el acceso a estos records y a las facilidades. Las personas también pueden hacer querellas con la SBA, y si la investigación refleja incumplimiento con los requerimientos aplicables, la SBA puede suspender los beneficios, acelerar el repago de la deuda o requerir la devolución de los fondos federales.

15. La Sección 504 dispone: "No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a).

16. La Parte Demandante es una persona protegida por la Sección 504 ya que es

una persona sustancialmente limitada en su capacidad de movimiento al presente y también para eso del 29 de julio de 2020 y para eso del 21 de enero de 2020.

17. La Parte Demandante es una persona elegible para recibir los beneficios y servicios que se hacen disponibles al público en la Propiedad.

18. Durante el pasado año, y al presente, todos los demandados-peticionados, y la Propiedad recibió fondos federales como parte de sus programas y actividades. Estos fondos federales, entre otros, a base de los fondos del CARES Act y el PPP antes discutidos. Se cree, y será objeto de descubrimiento de prueba, que también se han recibido fondos federales de otras fuentes y programas federales.

19. Durante los pasados cuatro años, y también durante el pasado año, la Parte Peticionada y la Propiedad, operó un programa o actividad cubierto por la Rehabilitation Act y también recibió fondos federales como parte de sus programas y actividades.

20. La conducta de la Parte Peticionada descrita en esta alegación violó los derechos de la Parte Peticionaria bajo la Rehabilitation Act al excluir a la Parte Demandante o negarle beneficios solamente por razón de su discapacidad.

21. La conducta de la Parte Peticionada demuestra una indiferencia deliberada hacia los derechos de la Parte Demandante porque la Parte Demandada sabía o debía saber de sus obligaciones legales bajo la legislación federal, más ignoró las misma de manera consciente.

22. La Parte Peticionaria sufrió angustia emocional y daños debido a la violación de la Rehabilitation Act por parte de la Parte Peticionada.

23. De conformidad con la Sección 505 de la Rehabilitation Act, la Parte Demandante tienen derecho a una compensación por sus daños, costas, gastos de litigio y honorarios de abogado.

24. Conforme a lo resulto por el Tribunal Supremo de los Estados Unidos en *Uzuegbunam v. Preczewski*, 592 U.S. ___ (2021), 2021 WL 850106 (March 8, 2021),[5] se solicita la imposición de daños nominales bajo la ADA y la *Rehabilitation Act*. En *Uzuegbunam,* se le prohibió a un estudiante predicar en el campus de la Universidad de Georgia cuando este era estudiante. En una decisión de 8-1 en *Uzuegbunam*, el Tribunal Supremo de los Estados Unidos concluyó que Chike Uzuegbunam podía reclamar daños nominales al Georgia Gwinnett College, aún cuando la universidad cambió su política discriminatoria en respuesta a la acción civil incoada por este. El juez Clarence Thomas fue el autor de la opinión mayoritaria y los jueces Samuel Alito, Stephen Breyer, Amy Coney Barrett, Neil Gorsuch, Elena Kagan, Brett Kavanaugh y Sonia Sotomayor también se unieron a la opinión mayoritaria, que puso fin a la práctica de "*tactical mootness*" en el contexto de las causas de acción federal. Esta práctica consiste en alegar que una violación de derechos se ha tornado académica con el fin luego solicitar la desestimación de la totalidad de la demanda. Si bien un reclamo de interdicto puede tornarse académico si se cumplen todos los requisitos de la doctrina y sus excepciones, el reclamo de todas maneras puede quedarse vivo mediante un reclamo de daños nominales. Los daños nominales representan una victoria concreta para el reclamante y sirven además como base para determinar quien es la parte prevaleciente en el procedimiento civil. En este caso, se solicita la imposición de daños nominales bajo la (i) ADA y (ii) bajo la Rehabilitation Act.

REMEDIOS

POR TODO LO CUAL, la Parte Peticionaria muy respetuosamente solicita los siguientes remedios legales:

---

[5] Ver https://www.supremecourt.gov/opinions/20pdf/19-968_8nj9.pdf

A. Una sentencia declaratoria disponiendo que la parte Peticionada ha violado los requisitos del Título III de la ADA y la reglamentación de implementación relevante de la ADA; y que la Propiedad no es completamente accesible y utilizable de manera independiente para personas con movilidad limitada como la Parte Peticionaria;

B. Un interdicto permanente de conformidad con 42 USC § 12188 (a) (2) y 28 CFR § 36.504 (a) que ordene a la Parte Peticionada a que tome todos los pasos necesarios para eliminar las barreras arquitectónicas descritas anteriormente y para que sus instalaciones cumplan con los requisitos establecidos en la ADA y sus reglamentos de implementación, para que sus instalaciones sean totalmente accesibles a, y de forma independiente, por personas con movilidad limitada, y que además ordene que el tribunal retendrá jurisdicción sobre este asunto y designe a un monitor por un período de cinco años para supervisar que la Parte Peticionada cumpla con los requisitos relevantes de la ADA y para asegurarse de que la Parte Peticionada haya adoptado y siga una política institucional que de hecho haga que la Parte Peticionada permanezca totalmente en cumplimiento con la ley;

C. En caso de que la Parte Peticionada continúe su condición discriminatoria, se solicita de conformidad con 42 USC § 12188 (a) (2) y 28 CFR § 36.504 que se ordene el cierre y clausura de la Propiedad como medida para detener la condición discriminatoria hasta tanto la Parte Peticionada haya acreditado de manera fehaciente a satisfacción del tribunal que se ha eliminado el discrimen;

D. Daños compensatorios al amparo de la Rehabilitation Act.

E. Daños nominales al amparo de la Rehabilitation Act y la ADA, según resulto *Uzuegbunam v. Preczewski*, 592 U.S. ___ (2021);

F. Pago de los costos de la acción y gastos de litigio, de conformidad con 42 USC § 12205;

G. Pago de honorarios razonables de abogados *no* bajo las Reglas de Procedimiento Civil de Puerto Rico, sino de conformidad con lo dispuesto en 42 U.S.C. § 12205 y 28 CFR § 36,505 y su jurisprudencia vinculante interpretativa y;

H. La provisión de cualquier otro remedio que sea justo y propio.

**SOMETIDO RESPETUOSAMENTE**.

Hoy 03 de mayo de 2021.

f/José Carlos Vélez Colón
LIC. JOSÉ CARLOS VÉLEZ COLÓN
R.U.A. NÚM.:  18913
JVELEZ@VELEZLAWGROUP.COM

VELEZ LAW GROUP LLC
421 AVE MUÑOZ RIVERA #205
SAN JUAN, PR 00918

1969 S ALAFAYA TRAIL #379
ORLANDO, FL 32828-8732

TEL.: (787) 599-9003
TEL: (407) 267-7130
FAX: N/A

Abogado de la Parte Peticionaria

# ANEJO A

El **Anejo A** es una alegación suplementaria que es producto de una investigación realizada por el señor Faustino Betancourt durante su última visita a la Propiedad.

Las imágenes que se presentan a continuación constatan el estado histórico de las instalaciones del centro comercial.

Cada imagen tiene al pie una referencia a la dirección aproximada de la acera, sus coordenadas aproximadas, una descripción de lo que muestra la imagen, así como una descripción sobre porque estás condiciones constituyen violaciones a la ley ADA.

Cada uno de los aspectos aquí señaladas está en controversia.

Las imágenes son a su vez una muestra representativa del estado en el que se encuentran las instalaciones del centro comercial.

En este procedimiento civil, están en controversia *todas* las instalaciones del centro comercial que tienen una configuración inconsistente con el derecho aplicable.

ESTACIONAMIENTO, RUTA DE ACCESO Y ENTRADA EN EL
CENTRO COMERCIAL



| | |
|---|---|
| **DIRECCION:** | 12 PR-172, Cidra, 00739, Puerto Rico |
| **COORDENADAS**: | 18.1776874582402, -66.14770230590501 |
| **DECRIPCION:** | En la imagen arriba se puede verificar que en cuanto a estacionamientos, no se cumple el requisito de que al menos un estacionamiento que cumpla con las especificaciones técnicas y dimensiones de la categoría "van". |
| **BARRERAS** | Estas condiciones dificultarian la ambulación de una persona que utilice silla de rueda, andador, bastón o que tenga dificultad de movilidad. Obstruyendo el disfrute de los bienes o beneficios ofrecidos por la Propiedad. |

2



| DIRECCION: | 12 PR-172, Cidra, 00739, Puerto Rico |
|---|---|
| **COORDENADAS**: | 18.1776874582402, -66.14770230590501 |
| **DECRIPCION:** | En la imagen arriba se puede verificar que el posicionamiento de la rotulación de los estacionamientos es sustancialmente inconsistente con la reglamentación aplicable. |
| **BARRERAS** | Estas condiciones dificultarian la ambulación de una persona que utilice silla de rueda, andador, bastón o que tenga dificultad de movilidad. Obstruyendo el disfrute de los bienes o beneficios ofrecidos por la Propiedad. |



| DIRECCION: | 12 PR-172, Cidra, 00739, Puerto Rico |
|---|---|
| COORDENADAS: | 18.1776874582402, -66.14770230590501 |
| DECRIPCION: | En la imagen arriba se puede verificar que los espacios adyacentes a los estacionamientos no conectan con una ruta accesible para llegar a la Propiedad. |
| BARRERAS | Estas condiciones dificultarían la ambulación de una persona que utilice silla de rueda, andador, bastón o que tenga dificultad de movilidad. Obstruyendo el disfrute de los bienes o beneficios ofrecidos por la Propiedad. |



| DIRECCION: | 12 PR-172, Cidra, 00739, Puerto Rico |
|---|---|
| COORDENADAS: | 18.1776874582402, -66.14770230590501 |
| DECRIPCION: | En la imagen arriba se puede verificar que la configuración y dimensiones de los espacios adyacentes a los estacionamientos es sustancialmente inconsistente con los requisitos de la reglamentación aplicable. |
| BARRERAS | Estas condiciones dificultarian la ambulación de una persona que utilice silla de rueda, andador, bastón o que tenga dificultad de movilidad. Obstruyendo el disfrute de los bienes o beneficios ofrecidos por la Propiedad. |



| | |
|---|---|
| **DIRECCION:** | 12 PR-172, Cidra, 00739, Puerto Rico |
| **COORDENADAS**: | 18.1776874582402, -66.14770230590501 |
| **DECRIPCION:** | En la imagen arriba se puede verificar que los estacionamientos no están identificados con el símbolo internacional de accesibilidad, además que los estacionamientos carecen de demarcación lo cual dificulta su funcionamiento y transgrede la ley aplicable. |
| **BARRERAS** | Estas condiciones dificultarian la ambulación de una persona que utilice silla de rueda, andador, bastón o que tenga dificultad de movilidad. Obstruyendo el disfrute de los bienes o beneficios ofrecidos por la Propiedad. |

ME SALVE INC. HACIENDO NEGOCIOS COMO TIENDA ME SALVE



| DIRECCION: | 12 PR-172, Cidra, 00739, Puerto Rico |
|---|---|
| **COORDENADAS**: | 18.1776874582402, -66.14770230590501 |
| **DECRIPCION:** | En la imagen arriba se puede verificar que hay racks en los que se espera que la persona alcance por iniciativa propia (self-service) materiales, objetos, bienes o informacion que están disponibles para todas las personas, pero esos materiales, objetos o bienes están fuera de alcance ya que están ubicados a más de 48" del suelo y los racks son sustancialmente impide el transito de las personas, en consecuencia es incompatible con los requisitos de la reglamentación aplicable. |
| **BARRERAS** | Estas condiciones dificultarian la ambulación de una persona que utilice silla de rueda, andador, bastón o que tenga dificultad de movilidad. Obstruyendo el disfrute de los bienes o beneficios ofrecidos por la Propiedad. |



| DIRECCION: | 12 PR-172, Cidra, 00739, Puerto Rico |
|---|---|
| **COORDENADAS**: | 18.1776874582402, -66.14770230590501 |
| **DECRIPCION:** | En la imagen arriba se puede verificar que los pasillos, góndolas, filas o caminos --ya sea para mirar los productos, acceder áreas de servicios, áreas de venta o pago, o cada tipo de mostrador de servicio y venta-- no tienen un espacio de al menos 36" que permita la movilidad adecuada dentro de la Propiedad de manera sustancialmente inconsistente con la reglamentación aplicable. |
| **BARRERAS** | Estas condiciones dificultarian la ambulación de una persona que utilice silla de rueda, andador, bastón o que tenga dificultad de movilidad. Obstruyendo el disfrute de los bienes o beneficios ofrecidos por la Propiedad. |



| DIRECCION: | 12 PR-172, Cidra, 00739, Puerto Rico |
|---|---|
| COORDENADAS: | 18.1776874582402, -66.14770230590501 |
| DECRIPCION: | En la imagen arriba se puede verificar que los pasillos de la tienda si ubican elementos que obstruyen el paso para las personas, además que ocasionan un grabe riegos a la integridad de una persona con discapacidad. |
| BARRERAS | Estas condiciones dificultarian la ambulación de una persona que utilice silla de rueda, andador, bastón o que tenga dificultad de movilidad. Obstruyendo el disfrute de los bienes o beneficios ofrecidos por la Propiedad. |

Case 3:21-cv-01293-FAB    Document 1-3    Filed 06/18/21    Page 46 of 60

## SUPERMERCADOS MÁXIMO, INC. HACIENDO NEGOCIOS COMO SUPERMAX CIDRA



| | |
|---|---|
| **DIRECCION:** | 12 PR-172, Cidra, 00739, Puerto Rico |
| **COORDENADAS**: | 18.1776874582402, -66.14770230590501 |
| **DECRIPCION:** | En la imagen arriba se puede verificar que hay mostradores donde las personas pueden conforme a su voluntad coger productos, pero estos están a una altura que será imposible que una persona en condición de discapacidad accediera a ellos. |
| **BARRERAS** | Estas condiciones dificultarian la ambulación de una persona que utilice silla de rueda, andador, bastón o que tenga dificultad de movilidad. Obstruyendo el disfrute de los bienes o beneficios ofrecidos por la Propiedad. |



| DIRECCION: | 12 PR-172, Cidra, 00739, Puerto Rico |
|---|---|
| **COORDENADAS**: | 18.1776874582402, -66.14770230590501 |
| **DECRIPCION:** | En la imagen arriba se puede verificar que hay mostradores donde se espera que la persona alcance por iniciativa propia, como son máquinas de pago, pero están fuera de alcance ya que las partes operables están ubicadas a más de 48" del suelo |
| **BARRERAS** | Estas condiciones dificultarian la ambulación de una persona que utilice silla de rueda, andador, bastón o que tenga dificultad de movilidad. Obstruyendo el disfrute de los bienes o beneficios ofrecidos por la Propiedad. |

Case 3:21-cv-01293-PAD   Document 1-3   Filed 06/18/21   Page 48 of 60



| DIRECCION: | 12 PR-172, Cidra, 00739, Puerto Rico |
|---|---|
| **COORDENADAS**: | 18.1776874582402, -66.14770230590501 |
| **DECRIPCION:** | En la imagen arriba se puede verificar que hay un mostrador de pago, pero la configuración y dimensiones son sustancialmente inconsistentes con la reglamentación aplicable. |
| **BARRERAS** | Estas condiciones dificultarian la ambulación de una persona que utilice silla de rueda, andador, bastón o que tenga dificultad de movilidad. Obstruyendo el disfrute de los bienes o beneficios ofrecidos por la Propiedad. |



| DIRECCION: | 12 PR-172, Cidra, 00739, Puerto Rico |
|---|---|
| **COORDENADAS**: | 18.1776874582402, -66.14770230590501 |
| **DECRIPCION:** | En la imagen arriba se puede verificar que hay un mostrador de pago, pero la configuración y dimensiones son sustancialmente inconsistentes con la reglamentación aplicable. |
| **BARRERAS** | Estas condiciones dificultarían la ambulación de una persona que utilice silla de rueda, andador, bastón o que tenga dificultad de movilidad. Obstruyendo el disfrute de los bienes o beneficios ofrecidos por la Propiedad. |



| DIRECCION: | 12 PR-172, Cidra, 00739, Puerto Rico |
|---|---|
| COORDENADAS: | 18.1776874582402, -66.14770230590501 |
| DECRIPCION: | En la imagen arriba se puede verificar que, en cuanto al área del inodoro, la altura del inodoro medida desde la superficie es sustancialmente inconsistente con la reglamentación aplicable. |
| BARRERAS | Estas condiciones dificultarian la ambulación de una persona que utilice silla de rueda, andador, bastón o que tenga dificultad de movilidad. Obstruyendo el disfrute de los bienes o beneficios ofrecidos por la Propiedad. |



| DIRECCION: | 12 PR-172, Cidra, 00739, Puerto Rico |
|---|---|
| COORDENADAS: | 18.1776874582402, -66.14770230590501 |
| DECRIPCION: | En la imagen arriba se puede verificar que, en cuanto al inodoro, la configuración del control para la descarga del inodoro es sustancialmente inconsistente con la reglamentación aplicable. |
| BARRERAS | Estas condiciones dificultarian la ambulación de una persona que utilice silla de rueda, andador, bastón o que tenga dificultad de movilidad. Obstruyendo el disfrute de los bienes o beneficios ofrecidos por la Propiedad. |

<u>GRAND STORE CORPORATION, HACIENDO NEGOCIOS COMO</u>

<u>GRAND STORES</u>



| DIRECCION: | 12 PR-172, Cidra, 00739, Puerto Rico |
|---|---|
| **COORDENADAS**: | 18.1776874582402, -66.14770230590501 |
| **DECRIPCION:** | En la imagen arriba se puede verificar que se provee un baño en el estacionamiento, pero carece de la rotulación que exige la reglamentación aplicable. |
| **BARRERAS** | Estas condiciones dificultarian la ambulación de una persona que utilice silla de rueda, andador, bastón o que tenga dificultad de movilidad. Obstruyendo el disfrute de los bienes o beneficios ofrecidos por la Propiedad. |



| DIRECCION: | 12 PR-172, Cidra, 00739, Puerto Rico |
|---|---|
| **COORDENADAS**: | 18.1776874582402, -66.14770230590501 |
| **DECRIPCION:** | En la imagen arriba se puede verificar que el área de los pasillos contiene barreras para el tránsito de las personas y no tiene rotulación que informe a las personas de las barreras, además que en la parte inferior de la imagen se evidencia que Hay un mostrador de pago, pero la configuración y dimensiones son sustancialmente inconsistentes con la reglamentación aplicable. |
| **BARRERAS** | Estas condiciones dificultarian la ambulación de una persona que utilice silla de rueda, andador, bastón o que tenga dificultad de movilidad. Obstruyendo el disfrute de los bienes o beneficios ofrecidos por la Propiedad. |



| DIRECCION: | 12 PR-172, Cidra, 00739, Puerto Rico |
|---|---|
| **COORDENADAS**: | 18.1776874582402, -66.14770230590501 |
| **DECRIPCION:** | En la imagen arriba se puede verificar que hay un mostrador de pago, pero la configuración y dimensiones son sustancialmente inconsistentes con la reglamentación aplicable. |
| **BARRERAS** | Estas condiciones dificultarian la ambulación de una persona que utilice silla de rueda, andador, bastón o que tenga dificultad de movilidad. Obstruyendo el disfrute de los bienes o beneficios ofrecidos por la Propiedad. |



| DIRECCION: | 12 PR-172, Cidra, 00739, Puerto Rico |
|---|---|
| COORDENADAS: | 18.1776874582402, -66.14770230590501 |
| DECRIPCION: | En la imagen arriba se puede verificar que en la imagen arriba se puede verificar que hay racks en los que se espera que la persona alcance por iniciativa propia (self-service) materiales, objetos, bienes o informacion que están disponibles para todas las personas, pero esos materiales, objetos o bienes están fuera de alcance ya que están ubicados a más de 48" del suelo y los racks son sustancialmente impide el transito de las personas, en consecuencia es incompatible con los requisitos de la reglamentación aplicable. |
| BARRERAS | Estas condiciones dificultarian la ambulación de una persona que utilice silla de rueda, andador, bastón o que tenga dificultad de movilidad. Obstruyendo el disfrute de los bienes o beneficios ofrecidos por la Propiedad. |

WENDCO OF PUERTO RICO, INC. HACIENDO NEGOCIOS COMO
WENDY'S PLAZA CIDRA



| DIRECCION: | 12 PR-172, Cidra, 00739, Puerto Rico |
|---|---|
| COORDENADAS: | 18.1776874582402, -66.14770230590501 |
| DECRIPCION: | En la imagen arriba se puede verificar que en cuanto al lavamanos, la parte de abajo del lavamanos no está configurada para evitar el contacto con los objetos que están debajo del lavamanos. |
| BARRERAS | Estas condiciones dificultarian la ambulación de una persona que utilice silla de rueda, andador, bastón o que tenga dificultad de movilidad. Obstruyendo el disfrute de los bienes o beneficios ofrecidos por la Propiedad. |



| DIRECCION: | 12 PR-172, Cidra, 00739, Puerto Rico |
|---|---|
| COORDENADAS: | 18.1776874582402, -66.14770230590501 |
| DECRIPCION: | En la imagen arriba se puede verificar que, en cuanto al área del inodoro, la altura del inodoro medida desde la superficie es sustancialmente inconsistente con la reglamentación aplicable. |
| BARRERAS | Estas condiciones dificultarian la ambulación de una persona que utilice silla de rueda, andador, bastón o que tenga dificultad de movilidad. Obstruyendo el disfrute de los bienes o beneficios ofrecidos por la Propiedad. |



| DIRECCION: | 12 PR-172, Cidra, 00739, Puerto Rico |
|---|---|
| **COORDENADAS**: | 18.1776874582402, -66.14770230590501 |
| **DECRIPCION:** | En la imagen arriba se puede verificar que en cuanto al área del inodoro, el posicionamiento del dispensador de papel de inodoro, así como el papel de inodoro, es sustancialmente inconsistente con la reglamentación aplicable. |
| **BARRERAS** | Estas condiciones dificultarian la ambulación de una persona que utilice silla de rueda, andador, bastón o que tenga dificultad de movilidad. Obstruyendo el disfrute de los bienes o beneficios ofrecidos por la Propiedad. |

## ANEJO B

El **Anejo B** es una alegación suplementaria dentro del cual se relaciona el documento oficial que acredita al señor Faustino Betancourt como beneficiario de los privilegios otorgados por el Departamento de Transportación y Obras Públicas del Gobierno de Puerto Rico:



El Departamento de Transportación y Obras Públicas del Gobierno de Puerto Rico (DTOP) ha expedido para beneficio del señor Betancourt Colón un rótulo removible de personas con impedimento físico, de modo que el señor Betancourt Colón pueda utilizar el rótulo para estacionarse en estacionamientos identificados como accesibles o "de impedido".  El rótulo removible no tiene que ser utilizado en un vehículo especifico ni tiene que ser utilizado en un vehículo de motor inscrito a favor del señor Betancourt Colón.

El señor Betancourt Colón tiene derecho a utilizar el rótulo removible expedido por DTOP en cualquier vehículo, ya sea uno propio, un familiar, un amigo o un vehículo que haya abordado de manera incidental, así mismo tiene derecho legal a utilizar estacionamientos designados como accesibles o "de impedidos" en esta jurisdicción sin importar el vehículo de motor en el que se encuentre abordo.

